IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| AVIATION FINANCE GROUP, LLC, as Administration Agent for AVIATION SECURITIZATION, LLC and WELLS FARGO BANK, NATIONAL ASSOCIATION (formerly known as Wells Fargo Bank Minnesota, N.A. and Northwest Bank Minnesota, N.A.) as Indenture Trustee, | ) ) ) ) ) ) ) | Case No. CV 08-535-LMB |
| | ) | |
| Plaintiff, | ) ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) ) | |
| DUC HOUSING PARTNERS, INC., a California corporation; and DANIEL A. DUC, | ) ) ) ) | |
| Defendants. | ) ) | |

Currently pending before this Court is Plaintiffs' Motion for Summary Judgment (Doc.

No. 28).[1]  The motions are fully briefed, and the parties' argued their respective positions to the

Court on December 4, 2009.  Subsequently, Plaintiffs filed a notice stipulating to a potential

question of fact for the purpose of resolving the motions for summary judgment.  Defendants

responded.   Having fully considered the parties' briefing, arguments  and the record, the Court

issues the following Memorandum Decision and Order.

------

[1]Defendants also filed a Motion to Continue Summary Judgment Proceedings Doc.  No. 31 and Motion for Leave to File Supplemental Memorandum of Law (Doc.  No. 42) which were resolved by agreement of the parties.  The former was withdrawn (Doc.  No. 43), and the latter unopposed and granted accordingly, (Doc.  No. 45).

MEMORANDUM DECISION AND ORDER  1

# I. BACKGROUND

This is a collection action.  It was originally filed in Idaho state court and removed to this Court on December 12, 2008.  Plaintiff Aviation Finance Group, LLC ("AFG") financed the purchase of a commercial aircraft by Defendant Duc Housing Partners, Inc. ("Duc Housing").  The $4,520,000 loan was secured by the aircraft as collateral and personally guaranteed by Defendant Daniel Duc ("Duc").[2]  Duc Housing defaulted on the loan in October 2008 with an outstanding principal balance of nearly $3 million.  AFG  gave written notice of default to both Duc Housing and Duc.  When both failed to cure the default, AFG exercised its right to accelerate the loan obligation and repossessed the aircraft.

At the time AFG repossessed the aircraft, it was in the possession of  Sunset Aviation, Inc. ("Sunset") which was asserting a mechanic's lien in excess of $400,000. *Declaration of Jerry Dunn*, (Doc. No. 28-4)("Dunn Decl."), ¶ 7; *Declaration of Daniel A. Duc In Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment*, (Doc. No. 30-2) ("Duc Decl."), ¶ 3.   AFG first demanded that Defendants obtain a release of the lien from Sunset, which they failed to do.  *Dunn Decl.*, ¶ 8.  Rather, Defendants' disputed the lien and asserted that they had defensive claims against Sunset.  *Duc Decl., ¶* 4.  In late December 2008, AFG paid Sunset Aviation $125,000 in exchange for release of the lien and obtained possession of the aircraft.  *Dunn Decl.,* ¶ 8;  *Duc Decl. ,*¶ 7.

---

[2]The loan documents included an Aircraft Loan Agreement, Promissory Note, Aircraft Security Agreement and Commercial Guaranty.  *See Dunn Decl.*, ¶ 4, Exhs.  A - D.

After repossessing the aircraft, AFG spent approximately $4,500 for repairs and maintenance, and had the aircraft appraised. *Dunn. Decl.*, ¶ 9. The appraiser, Mary K. Kingston, provided the following opinion as to value:

> [I]t is this appraiser's opinion that this aircraft's current and highest best use forced liquidation value as of [February 20, 2009] is $2,040,000 and the current market value as of [February 20, 2009] is $2,576,000.

*Dunn. Decl.*, ¶ 9, Exh. F, Aircraft Valuation (Doc. No. 28-6) ("AFG Appraisal"), p. 8. Both values assumed a buyer would receive a $25,000 credit to repaint the aircraft. *Id.* She defined "Current Market Value" as:

> The most probable amount, expressed in terms of money, as of a specific date, that should reasonably be expected in exchange for an aircraft sold "as is" and "where is" between a willing buyer and a willing seller, in an arm's-length transaction, with equity to both, neither being under any compulsion to buy or sell and both being fully aware of all relevant facts related to the aircraft. (Same as Fair Market Value [FMV]).

*Id.* at p. 18. (Doc. No. 28-6 at p. 25). She defined "Forced Liquidation Value" as:

> The most probable amount, expressed in terms of money, as of a specific date, which should be attainable from the sale of an asset sold at the properly advertised and conducted absolute public auction, the seller being compelled to sell, with a sense of immediacy, or an "as is" and "where is" basis with no warranty implied or expressed.

*Id.*

Defendants obtained their own appraisal. *Duc Decl.*, ¶ 8, Exh. A (Doc. No. 30-3) ("Defendants' Appraisal"). Defendants' appraiser estimated the "fair market value" of the aircraft as of January 2009 (and valid only through July 2008[sic]) at $2,582,545 - only $6,500 more than AFG's fair market value appraisal. *Id.* (Doc. No. 30-3, p. 17). Defendants' appraiser defines "fair market value" the same as AFG's appraiser, but does not address a "forced liquidation" value. Defendants' appraiser does indicate, however, that a "13 month supply" of

MEMORANDUM DECISION AND ORDER  3

the aircraft inventory existed at the time of the appraisal.  *Id.*  (Doc.  No. 30-3, p. 14.)

AFG first attempted to sell the aircraft by on-line public auction which it promoted for "more than a month" through various means including:  aircraft listing services, flight magazines, relevant e-mail databases and websites, direct mailers and telemarketing.  *Dunn Decl.*, ¶ 10.  Defendants' objected to the "fast-track" on-line auction as the means of selling the commercial aircraft.  *Duc Decl.*, ¶ 7.

The bidding closed on March 4, 2009, and produced top bids ranging from $1,950,000 to $1,991,000.  *Dunn Decl.* at ¶ 11.  The top bidders, however,  were unable to close on the purchase.  *Id.*  Following the auction, AFG received and rejected lower bids of $1.6 and $1.8 million.  *Id.* at ¶ 12.

AFG then engaged[3] a professional pre-owned aircraft seller, O'Gara Aviation Company ("OAC"), to market the aircraft for a private sale.  *Id.* John B. Foster III, the CEO and co-founder of OAC, represented OAC.  *Declaration of John B. Foster, III* (Doc. No. 28-3) ("Foster Decl."), ¶ 1.  Foster also happens to be one of three partners in AFG.  *See Affidavit of Samuel A. Diddle In Support of Supplemental Memorandum of Law In Opposition to Plaintiffs' Motion for Summary Judgment* (Doc. No. 42) ("Diddle Affid."), ¶¶ 8, 10 & 17; Exhs. F, H & O.

According to the record, AFG apparently was under time pressure to sell the aircraft.

---

[3]The record indicates only a verbal "brokerage agreement" and that OAC would not receive a commission, but was doing it as a favor for AFG.  *See* Doc.  No. 42-2, p. 7.

MEMORANDUM DECISION AND ORDER  4

When AFG engaged OAC to sell the aircraft, Jerry Dunn, AFG President, wrote Foster the following e-mail:

> When do you expect to heavily market the Beechject (website, etc.)?
> The clock is ticking on [AFG's] bond default trigger.  If we don't sell the Aircraft before June 1st, we will have to repurchase the loan for $3 million to avoid a bond default.  Since AFG does not have the $3million to buy the loan back, our only way to avoid a bond default is to turn the Aircraft into cash quickly.

*Id.*, Exh. A.  OAC did not advertise an asking price for the aircraft and received several inquiries in early April.  OAC responded generally that the asking price was in the mid-$2 million range, but that a low $2 million range offer would be accepted.  *See Diddle Affid.*, ¶  Exh. M.

Previously, in December of 2008, Foster had communicated  with a Venezuelan man named Juan Maldonado, who was looking to purchase a pre-owned commercial aircraft.  *Diddle Affid.*, Exh. C.  At that time, Foster had sent an e-mail to Maldonado stating:

> My preference is to work for you locating and buying an aircraft rather than being paid by a seller to sell the aircraft to you.  I will only represent one party to the transaction and want you to be aware of all that we are doing to make the best possible purchase for you.

*Id.*

On April 12, 2009, after AFG engaged OAC to sell the aircraft, Foster received an inquiry from Maldonado regarding the condition and asking price for the aircraft.  *Diddle Affid.*, ¶ 5, Exh. C; (Doc.  No. 42-2, p. 9).   Maldonado subsequently made an offer on the aircraft for $1.6 million.  *See id.* at ¶ 8, Exh. F.  In correspondence to Dunn regarding that offer, Foster stated:

> Have been working Juan Carlos Mondaldo[sic] in Venezuala since December - a true bottom fisher, but we need to respond as offer expires tomorrow.  Call so we can discuss.

*Id.* at ¶ 7, Exh. E. (Doc.  No. 42-2, p. 10).

Dunn responded to Foster:

If we accept the $1.8 mm, it is going to have some very negative consequences to

MEMORANDUM DECISION AND ORDER  5

AFG and its partners.

At such a low price, it will create such a large collateral loss that the AFG partners might have to make a capital call to offset a portions of the loss and prevent the bond from going into default.  I am also concerned that our borrower will use the low ball price as a way to get out of his personal guarantee.  His attorney has done some homework on the Beechjet market, and based on info they have shared with us, they will more than likely challenge the price because they know that asking prices for newer 400As is in the $2.8mm range.

Secondarily, I am afraid that this, combined with the Gulfstream II loss, will have such a negative impact on our historical loan performance that it will make it very difficult to get AFG#2 up and running again.

I received a couple of low ball offers at $1.8 mm after the auction ended, but did not accept them in hopes you might be able to get us in the $2mm range.

Since you have a larger ownership stake in AFG than me, what do you think we should do?

*Id.* at ¶ 8, Exh. F.

AFG initially rejected Maldonado's first $1.6 million offer, and then also a subsequent offer of $1.8 million.  On April 14, 2009, however, AFG and Maldonado agreed to a $2 million purchase price.  *See id.* at ¶ 11, Exh. I.  The purchase agreement was executed in May 2009, and the sale closed on June 12, 2009.  *Dunn Decl.*, ¶ 14.

After the aircraft was under contract but before the agreement closed,  OAC continued to receive inquiries.  To those inquiries, OAC responded that the asking price was $2.65million but advised that the aircraft was under contract.  *See id.*, ¶ 16, Exh. N.  AFG subsequently obtained a supplemental appraisal of the aircraft which concluded that, as of December 2009, the fair market value of the aircraft was down to $2,077,000 and its forced liquidation value was down to $1,662,000.  *Supplemental Declaration of Mary K. (Kathy) Kingston* (Doc.  No. 44-1), ¶ 2, Exh. A, p. 1.

MEMORANDUM DECISION AND ORDER  6

Plaintiffs bring this action seeking to collect the remaining balance, including fees and interest, owed on the loan.  In the pending motion for summary judgment, Plaintiffs' argue that there is no genuine issue of material fact in dispute which precludes the Court from entering judgment as a matter of law in AFG's favor on both Defendants' liability and the amount of damages.  In response to Plaintiffs' motion for summary judgment, Defendants do not dispute their default on the loan or guaranty, or Plaintiffs' entitlement to repossess the aircraft collateral.[4]  Defendants oppose the motion for summary judgment only as to the amount of the deficiency.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is

---

[4]  Based on review of Plaintiffs' unopposed and un-controverted pleadings, documents and declarations on this issue, the Court will grant summary judgment in Plaintiff's favor for Defendants' breach of contracts set forth in Claims I and II of Plaintiff's complaint.

MEMORANDUM DECISION AND ORDER  7

"not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings

MEMORANDUM DECISION AND ORDER  8

and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

### III.  ANALYSIS

AFG's position in its original motion for summary judgment was that there are no genuine issues of fact in dispute that prevent the court from entering judgment in AFG's favor for the entire balance of the loan including interest, fees and expenses, less the proceeds from the sale of the aircraft.   Defendants disagreed, and argued that AFG is not entitled to summary judgment on the claimed deficiency amount because (1) AFG failed to dispose of the collateral in a commercially reasonable manner, or alternatively, whether Plaintiff did so was a matter of disputed facts which preclude the Court from entering summary judgment, and (2) certain "sale expenses" Plaintiff claims as part of the deficiency are either premature or not allowed under the sale agreements.

**A.**     **Plaintiffs' Notice of Stipulation**

Since filing their original moving papers and reply memorandum, and after the Court heard the parties' argue their respective positions, Plaintiffs filed a Notice of Stipulation to Facts For Purposes of Summary Judgment Only (Doc. No. 47) ("Notice").  Therein, Plaintiffs stipulated to the fact that a commercially reasonable sale would have realized a sale price of $2,582,545, which is Defendants' appraiser's opinion of the fair market sales value of the aircraft as of January 2009, and "valid through July 2008[sic]".  Plaintiffs contend that in so doing, they eliminated any potential questions of fact which could have precluded the Court from entering judgment in their favor.  Defendants maintain that questions of fact remain notwithstanding Plaintiffs' stipulation.

MEMORANDUM DECISION AND ORDER  9

It is not clear to the Court if Plaintiffs intended a conditional stipulation which the Court should consider only in the event that the it finds questions of fact on the issue which would preclude the court from granting their motion for summary judgment. Plaintiffs did not state that the stipulation was conditional in their Notice of Stipulation, but did so in their Reply to Defendants' Response to Notice of Stipulation To Facts for Purposes of Summary Judgment Only (Doc. No 51).

In the interest of establishing a clear record and for the purposes of judicial economy, the Court will address the issue of commercial reasonableness of the sale and concludes that genuine issues of material fact exist that prevent the Court from granting Plaintiffs' judgment on this issue.

**B.    Commercial Reasonableness of Sale**

    **1.    Legal Standard of Commercial Reasonableness**

Article 9 of the Uniform Commercial Code governs the disposition of the aircraft at issue in this lawsuit. All aspects of the disposition must be commercially reasonable "including the method, manner, time, place and terms." I.C. § 28-9-610(b) (formerly I.C. § 28-9-504(3). *See Mack Financial Corp.v. Scott*, 100 Idaho 889, 891, 606 P.2d 993, 995 (1980). Whether a sale is commercially reasonable is governed by I.C. § 28-9-627, which states in relevant part:

> (a) The fact that a greater amount could have been obtained by a collection, enforcement, disposition or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition or acceptance was made in a commercially reasonable manner.
>
> (b) A disposition of collateral is made in a commercially reasonable manner if the disposition is made:
>
>     (1) In the usual manner on any recognized market;

MEMORANDUM DECISION AND ORDER  10

(2) At the price current in any recognized market at the time of the disposition; or

(3) Otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

Plaintiffs have the burden of establishing that the aircraft's  disposition was conducted in a commercially reasonable manner,  I.C. § 28-9-626, which is a question of fact.  *See CIT Financial Serv. v. Herb's Indoor RV Center*, 108 Idaho 820, 822, 702 P.2d 858, 860 (Ct. App. 1985) (reversing trial court's grant of summary judgment because issue of commercial reasonableness was question of fact); *Erickson v. Marshall*, 115 Idaho 847, 849, 771 P.2d 68, 70 (Ct. App. 1989) (vacating trial court's grant of summary judgment because material question of fact existed regarding commercially reasonable delay in repossession of collateral).

"In Idaho, the failure of a secured party to dispose of collateral in a commercially reasonable manner . . . raises a [rebuttable] presumption that the fair market value of the collateral at the time of repossession was equal to the outstanding debt." *Snake River Equip. Co. v. Christensen,* 107 Idaho 541, 545, 691 P.2d 787, 791 (Idaho Ct. App. 1984) (*citing Mack Financial Corp. v. Scott,* 100 Idaho 889, 606 P.2d 993 (1980)); I.C. § 28-9-626(d).

### 2.    Application of Legal Standard Without Stipulation.

Plaintiffs' principal argument in support of summary judgment is that it presented un-controverted expert testimony that AFG marketed and sold the aircraft in conformity with the industry standards for dealers of pre-owned aircraft (I.C. § 28-9-627(b)(3)), and they are therefore entitled to a "conclusive presumption" that the sale was commercially reasonable.  *See*

*Tippett v. Bayman*, 105 Idaho 744, 746, 672 P.2d 1074, 1076 (Idaho Ct. App. 1983).[5]  After

careful review of the case law and the record, the Court concludes that no "conclusive

presumption" exists under the circumstances presented in this case.  Further, the Court finds

disputed questions of fact regarding whether AFG's conduct in disposing of the aircraft was

commercially reasonable which preclude the Court from granting summary judgment in

Plaintiffs' favor on this issue.

> **a.    The "conclusive presumption" does not apply to the private sale of the aircraft.**

Plaintiffs rely upon *Tippett v. Bayman*, 105 Idaho 744, 746, 672 P.2d 1074, 1076 (Idaho

Ct. App. 1983), in support of its argument that substantial compliance with the UCC gives rise to

a conclusive presumption of commercial reasonableness. Plaintiffs argue that in *Tippet*, the

Idaho Court of Appeals held that a sale is conclusively reasonable if the collateral is sold ". . . in

conformity with reasonable commercial practices among dealers in the type of property sold."

*Reply Memorandum*, at p. 2 (Doc.  No. 35, p. 4).   The Court does not interpret *Tippett* to be as

clear as urged by Plaintiffs.

A careful reading of the language which Plaintiffs argue sets forth the conclusive

presumption that would apply in this case is *dicta*.  The issue decided in *Tippet* was whether the

secured creditors' public sale of seized beefalo cattle by public auction had been conducted in a

commercially reasonable manner.  The trial court weighed the evidence and concluded that,

although certain notice requirements provided by the code had not been met, the sale was

conducted in a commercially reasonable manner as a matter of fact.  The debtor argued on appeal

---

[5] Plaintiffs first raised the conclusive presumption in their Reply memorandum.  The Court's decision on this legal argument is made without the benefit of a response by Defendants.

that the creditors' failure to comply with the Article 9 requirements for a public sale meant that

the sale was commercially unreasonable as a matter of law.   The Court of Appeals rejected that

argument in the following quote, upon which Plaintiffs rely:

> Substantial compliance with the provisions of the Uniform Commercial Code gives
> rise to a conclusive presumption that the sale was conducted in a commercially
> reasonable manner; however, the reverse is not necessarily true.  Failure to sell in a
> "recognized market" does not necessarily render the sale commercially unreasonable
> as a matter of law.  Rather, if the Code criteria are not satisfied, the issue of
> commercial reasonableness becomes one of fact.

*Id*.  Though admittedly the Idaho Court of Appeals makes a broad reference to a conclusive

presumption, the actual holding of *Tippet* is more narrow, and references the impact of *failing* to

comply with, not of complying with, the notice provisions of the code.

The distinction is important; if Plaintiffs' interpretation were correct, then the Idaho Court

of Appeals would have adopted a unique statutory provision of another state's commercial code

without explanation.  The Idaho Court of Appeals cites to *ITT-Industrial Credit Co. v. Milo*

*Concrete Co., Inc.*, 31 N.C.App. 450, 229 S.E.2d 814 (1976), as authority for its statement of law

quoted above.  *See id.*   The North Carolina case dealt with an express statutory presumption

which had been enacted by that state at the time under its "Public Sale Procedures."  *See id* .at

456 - 57, 229 S.E.2d at 820.[6]   The North Carolina statutes further provided that "any disposition

of the collateral by public sale wherein the secured party has substantially complied with the

procedures provided in this part is conclusively considered to be commercially reasonable in all

aspects."  *See id.* (*citing* N.C.G.S. § 29-9-601(1967))(emphasis added); *see also Graham v.*

*Northwestern Bank*, 16 N.C. 287, 293, 192 S.E.2d 109, 113 (1972).   The presumption statute

---

[6] The Public Sale Procedures specified the contents of and the requirements for the
posting and mailing of the notice of the public sale, and for the postponement of a sale.  *See id.*

MEMORANDUM DECISION AND ORDER  13

was not part of the "Official Text" of the UCC and was unique to North Carolina,  *ITT-Industrial Credit Co.,* 229 S.E.2d at 820; *Graham*, 192 S.E.2d at 113.  The statute has since been repealed under a complete revision of Article 9. *See* 2000 N.C. Sess. Laws 169.[7]

More importantly, the conclusive presumption is not now, nor appears to ever have been, found in the Idaho commercial code.  Although the *Tippet* court cites *CIT Corp v. Lee Pontiac Inc.*, 513 F.2d 207 (9th Cir. 1975), for its application of Idaho law on the subject, the Ninth Circuit case makes no mention of the presumption or facts which suggest that the presumption was applied.  The *CIT Corp* case only confirms that whether a sale is commercially reasonable is a question of fact based on the "aggregate of circumstances in each case." *See CIT Corp.*,  513 F.2d at 209 -10.  Under the circumstances existing here, this Court declines to interpret *Tippet* as standing for the conclusive presumption that Plaintiff argues and that is not otherwise found in Idaho law.[8]

Even if better reasoning would lead to a finding that the conclusive presumption is a part of the Idaho commercial code, the result would nonetheless be the same.  The presumption would not apply because it applies to the disposition of collateral under *public sale* procedures, and not Article 9 generally.  In this action, Plaintiffs ultimately disposed of the aircraft by a

_____

[7]  The conclusive presumption language appears nowhere in the revised text.

[8]  South Carolina appears to be the only state in which the provision is enacted currently as part of its commercial code.  *See* S.C. Code Ann. §  36-9-629 (in order to reduce uncertainty over the commercial reasonableness of a public sale which is conducted in compliance with the code provisions).  According to one commentator, the conclusive presumption is "contrary to the goals of the default provisions of Revised Article 9, which encourages private dispositions of collateral" which are believed to produce higher proceeds.   *See* Murray, J., South Carolina's Public Sale Procedures Under the Uniform Commercial Code Revised Article 9 - Secured Transactions, 55 S. C. L. Rev. 501 (2004).

MEMORANDUM DECISION AND ORDER  14

private sale and those efforts would not be entitled to the conclusive presumption.

In sum, the *Tippett* court's reference to a "conclusive presumption" is at most an overly broad statement, made in dictum, of the application of a statute that was limited to public sales, and notably has since been repealed.  It is not necessary for this Court to speculate as to analyze or predict  whether the Idaho courts would recognize the presumption if faced squarely with that issue today.   The Court finds that the presumption clearly does not apply in this instant action.

> **b.     The record contains disputed questions of fact regarding the commercial reasonableness of the sale of the aircraft.**

Without the avail of the presumption, the applicable standard in this action is whether Plaintiffs have met its burden of showing that there are no material facts in dispute as to whether it sold the aircraft "in conformity with reasonable commercial practices among dealers" of pre-owned commercial aircraft, I.C. § 28-9-627(b)(3), or otherwise in a reasonable commercial manner.  For the reasons stated below, the Court concludes that the burden was not met and that issues of material fact exist which preclude granting Plaintiffs' motion for summary judgment on the issue of commercial reasonableness of the sale.

> **1)     The Evidence Presented Regarding Commercial Reasonableness**

The parties and the Court agree that the aircraft at issue is a complicated asset for which expert testimony is necessary to establish its value and the applicable industry standard for a commercially reasonable method for its disposition.  *See Sunjet, Inc. v. Ford Motor Credit Co.,* 703 S.W.2d 285 (Tex. Ct. App. 1985).


Plaintiff puts forth two sworn declarations.  The first is from Jerry Dunn, AFG's

MEMORANDUM DECISION AND ORDER  15

President, regarding AFG's marketing efforts before engaging OAC.  The second is from John

Foster as an expert in sales of pre-owned commercial aircraft.  Dunn declares that the aircraft's

sales price of $2 million was a reasonable price in that market at the time based on AFG's

appraisal value for a "forced liquidation" and the highest bids produced by the on-line auction.

He also explains that AFG's marketing efforts which he declares were more than what is

required to be commercially reasonable.

Foster declares that he is the CEO and co-founder of OAC, which AFG engaged to broker

a private sale in early April 2009 after the on-line auction had failed.  *Foster Decl.*, ¶¶  1 & 5.

He further declares that OAC has been in the business of "aircraft brokerage, acquisition, sales,

management, leasing and flight operations" for over 30 years and that "[a]n important and

constant part of OAC's business is marketing pre-owned business aircraft" like the one at issue

in this case.  *Id.*   Foster personally has more than 36 years experience in aircraft marketing and

sales, and other relevant experience.  *Id.* at ¶  4.  In his opinion,  OAC's brokering of the sale of

the aircraft conformed to the industry standards.  *Id.* at ¶ 4.

Defendants do not dispute the competency of either of Plaintiffs' experts to testify on the

issues presented here, and did not initially controvert their testimony with other witness's

testimony.  Instead, Defendants argue that AFG failed to dispose of the aircraft in a

commercially reasonable manner, or whether it did so in a commercially reasonable manner

raises questions of fact.  Defendants contend that the on-line auction attempt was unreasonable

for a sophisticated asset such as the commercial jet and "blighted" the aircraft.  Defendants

further argue that the evidence shows that AFG unreasonably rushed the sale, resulting in a sales

MEMORANDUM DECISION AND ORDER  16

price that was significantly below the fair market value of the aircraft. [9]  Defendants also argue

that Foster's relationships with AFG and Maldonado present conflicts of interest which also raise

doubts as to the commercial reasonableness of the sale and AFG's motivation in not allowing

more time for higher bids to come forward.

In response to Plaintiff's Notice, Defendant supplemented their record with a Declaration

of Thomas J. Neff, who is a broker and dealer of aircraft. (Doc. No. 49-1).   Neff disputes that

the sale was performed in a commercially reasonable manner.  *See id.*, ¶ 1.

Initially, Plaintiffs responded that Defendants had failed to put forth any evidence

necessary to dispute Plaintiffs' factual evidence that the disposition of the aircraft was

commercially reasonable, or to show that the aircraft would have produced a higher sale price

had it been marketed for a longer period of time.  Accordingly, Plaintiffs reaffirmed their

position that no questions of fact were in dispute.  Plaintiffs did not object to the supplemental

expert affidavit.

The Court finds and thus concludes, even in the absence of Defendants' supplemental

expert affidavit, that there are disputed issues of material fact regarding the commercial

reasonableness of the disposition of the aircraft.

### 2)    Questions of Fact Regarding Price and Timing of the Sale

Defendants argue that AFG, and Foster as a principal partner in AFG, was under a time

pressure to sell the aircraft before June 2009 that resulted in AFG rushing the sale and accepting

an sales price - both of  which were not commercially reasonable.

---

[9] Defendants emphasize, in particular, an older aircraft of the same model which sold at
the same time for $2.4 million.

Although a low sale price of collateral alone does not render a sale commercially unreasonable, a court need not ignore the sales price and may consider it as a factor in determining whether the sale was commercially reasonable. *See Cit Corp.,* 513 F.2d at 209-10. In this case, there is evidence in both Plaintiffs' and Defendants' appraisals supporting a higher fair market value which raises questions of fact about the sale price.   Both Defendants' and Plaintiff's appraisals estimate the fair market value of the aircraft at nearly $2.6 million. Although Plaintiffs contend that its "forced liquidation value" is the better measure of the aircraft's value, this fact is disputed by Plaintiffs' independent appraisal.

Like price, the amount of time and/or effort spent in advertising and attempting to sell the aircraft are factors which the court may properly consider.  I.C. ¶ 28-9-610(b); *Nelson v. Armstrong*, 99 Idaho 422, 431, 582 P.2d 1100, 1101 (1978).  Many cases address the timing of the disposition of collateral, but more often in the context of an unreasonable delay.  The Idaho Court of appeals notes that "the determination of whether delay is commercially unreasonable requires a consideration of all the surrounding circumstances, including market conditions, the possible physical deterioration of the collateral, its economic deterioration through obsolescence, and the time required to assemble the collateral and prepare it for sale." *Erickson v. Marshall*, 115 Idaho 847, 849, 771 P.2d 68, 70 (Ct. App. 1989) (*citing* Anderson, § 9-504:20).  Although the law clearly does not require a creditor to hold onto an asset indefinitely, this Court believes the "surrounding circumstances" rule likewise applies to an expedient sale of collateral particularly where the sale price appears to be significantly below the undisputed, appraised fair market value of the collateral and where there are factors in addition to obtaining the optimum price at play (for example, the default deadline in this case).

MEMORANDUM DECISION AND ORDER  18

Analyzing all of the circumstances that exist in this case, the Court concludes that there are disputed issues of material fact also regarding the timing of the private sale. Plaintiffs' expert, Foster, testified that the amount of time OAC marketed the aircraft, and within which it was sold was consistent with the industry standard. Defendants provide no controverting testimony. However, the facts upon which Foster relies for his conclusion that OAC's brokerage of the aircraft was consistent with the industry practice are contradicted by other evidence in the record. Foster testifies that OAC began marketing the aircraft in April 2009, and that "in approximately the middle of May 2009, OAC located a buyer for the Aircraft in Venezuela, and, in June 2009, that buyer purchased the Aircraft for $2 million." *Foster Decl.*, ¶ 5. The internal e-mail communications Plaintiff produced in discovery, however, reveal a different set of facts as to the times in question. Specifically, the record shows that the buyer, Maldonado, inquired about the aircraft on April 12, 2009, shortly after OAC began its marketing. Although the "asking price" was "officially" $2.65 million, AFG agreed to Maldonado's $2 million purchase price two days later and the Aircraft Purchase Agreement was signed on May 5, 2009. Moreover, these disputed facts regarding the timing are material in this case, particularly in view of the disputed facts regarding the reasonableness of the price and AFG's internal timing pressures.

Plaintiffs contend that the inaccuracy of Foster's testimony was a regrettable mistake. Defendants request that Plaintiffs' expert's affidavit be stricken because of inconsistencies between the expert testimony given and the more recently produced documents. Rather than being a "regrettable mistake," Defendants argue the inconsistencies were intentional misrepresentations of the facts in order to bolster Plaintiffs' argument that the OAC marketing

MEMORANDUM DECISION AND ORDER  19

efforts were commercially reasonable, and to make them appear to have been ongoing for much longer than the actual two week period of time.  The Court denies Defendants' informal request to strike the affidavit.  The evidence is contradictory and, therefore, raises issues of fact.[10]

The record, viewed in the light most favorable to Defendants, shows that AFG agreed to accept a purchase price greater than $500,000 below the appraised fair market value of the aircraft, from a buyer they describe as a "true bottom fisher," very shortly after beginning its initial marketing efforts.  The record shows that AFG was under internal time pressures and there are genuine issues of material fact regarding the market for used aircraft at that time.  For all of the reasons discussed above, the Court concludes that there are disputed issues of material fact as to whether AFG's conduct in disposing of the aircraft was commercially reasonable. Accordingly, Plaintiffs' motion for summary judgment on this issue is denied.

**C.     Impact of Plaintiff's Alternative Concession of Commercially Reasonable Sales Price.**

In view of the Court's conclusion that there are disputed issues of fact regarding the commercial reasonableness of the sale, the effect of Plaintiffs' stipulated commercially reasonable sales price will be discussed.  Plaintiffs contend that all questions of fact have been resolved by the stipulation, and all that remains to be decided is the amount of proceeds to apply to the outstanding debt.

Defendants disagree and contend that the judgment may not be entered Plaintiffs' favor because, among other reasons discussed in § III.D. below, genuine issues of material fact remain as to (1) the value of the aircraft and the amount for which it would have been sold, and (2)

---

[10] Plaintiffs fail to supplement or amend Foster's opinion to address the inconsistencies. Accordingly, his declaration stands as Plaintiffs' record testimony on the matter.

whether or not AFG overcame the presumption under I.C. § 28-9-626(d) that the proceeds of a commercially reasonable sale would have been equal to the outstanding debt.  Having carefully studied and analyzed the record, the Court finds no remaining issues of fact regarding the amount of proceeds that would have been realized from a commercially reasonable sale of the aircraft.

### 1.    There are no remaining factual disputes regarding the amount of proceeds that a commercially reasonable sale would have realized.

As a matter of undisputed fact on the record, a commercially reasonable sale of the aircraft would have realized at least $2,582,545.  Defendants submitted no evidence into the record that a higher sales price would or could have been realized.  Moreover, there is no competent evidence in the record that selling the aircraft at a later date would have realized a higher sale price.  The only evidence in the record of the later market is AFG's supplemental appraisal which sets forth that the market for this type of aircraft declined further, and, accordingly, the price declined as well.  Accordingly, the Court finds and thus concludes that it is undisputed based on this record that a commercially reasonable sales price for the aircraft at the time it was sold was $2,582,545.

### 2.    The Presumption Under I.C. §  28-9-626(d) Does Not Apply In View of The Undisputed Factual Record

Idaho Code § 28-9-626(d) provides that if a secured party fails to prove that collateral was disposed of in a commercially reasonable manner, then a deficiency is limited to the amount of proceeds a commercially reasonable sale would have generated. *See id.* That amount is presumed to be "the amount of the secured obligation . . .  unless the secured party proves that amount is less than that sum." *Id.*

MEMORANDUM DECISION AND ORDER  21

Plaintiffs have the burden to rebut the presumption that sale proceeds would have been equal to the debt.  To do so, Plaintiffs rely upon the Defendants' expert appraiser's opinion as the record evidence of the highest appraised fair market value of the aircraft.

Defendants contend, however, that questions of material fact remain because the record contains evidence of "comparable sales" as high as $2,814,000.  *See Reply to Defendants' Response to Notice of Stipulation to Facts for Purposes of Summary Judgment Only*, (Doc, No. 51), n.1.  Moreover, Defendants' asserted range is still "less than" the outstanding debt.

The highest proposed value on this record, supported in the record by competent evidence, is Defendants' appraiser's opinion regarding the fair market value of the aircraft as of January 2008, which is Plaintiffs' stipulated amount of $2,582,545, and considerably less than the outstanding debt.  Although there is some evidence that older, similar aircraft sold for as much as $2,750,000, that evidence standing alone does not create a question of fact regarding the fair market value of this particular aircraft.  Defendants' expert appraiser took those higher comparable sales into consideration in arriving at his lower current fair market value opinion. There is no further expert testimony that the aircraft in question here would bring that high of a price regardless of the type of sale and when it was sold.[11]

---

[11] Defendants attach a new expert affidavit to their response to AFG's notice of stipulation that asserts that a comparable sale for the amount of $2.4 million on June 17, 2009, "strongly suggests that the Beachjet sold by O'Gara could have received a substantially higher sales price."  *See Declaration of Thomas J. Neff*, ¶ 5. (Document No. 49-1).   The Court would have to strain too far to interpret Mr. Neff's speculative statement as an expert opinion that the aircraft would have sold for over $3 million.

MEMORANDUM DECISION AND ORDER  22

The undisputed record shows that the outstanding debt was over $3.1 million ($2,980,433.69 in principal and $167,453.80 in interest).[12]  There is no evidence in the record that the aircraft in question here would have sold for close to, much less over, $3 million. Accordingly, the Court concludes that the presumption that the amount of the proceeds realized from a commercially reasonable sale would have been equal to the debt does not apply in this case.

**D.      Issues of Fact Regarding Indebtedness**

Defendants contend that judgment should not be entered in favor of Plaintiffs on the amount of the outstanding indebtedness because there are questions of fact regarding the propriety of amount of certain expenses Plaintiffs' include in their claim.

**1.       Payoff Lien to Sunset Aviation - $125,000**

Plaintiffs claim it is entitled to include in the outstanding loan balance the $125,000 Plaintiff paid for the release of the lien by Sunset Aviation to obtain possession of the aircraft. Defendants object to Plaintiff having paid this lien on the basis that it was invalid.  Duc declares that Duc Housing had substantial claims against the lien-holder including "chartering the jet without remitting charter income revenues to Duc Housing, negligent and improper maintenance and conversion." *Duc Decl.*, ¶ 4.  Defendants provide no legal authority or evidence opposing Plaintiffs' motion for summary judgment on this issue.

Plaintiffs respond that the loan agreements obligate Defendants to pay any expenses incurred in the disposition of the collateral, and prohibit defendants from allowing the aircraft to

---

[12] AFG also claims $248,680.06 in collection expenses.  Defendants dispute the validity of a large portion of these expenses which figure includes $125,000 which AFG paid to obtain a lien release and possession of the aircraft.

MEMORANDUM DECISION AND ORDER  23

have come under an incumbrance.  Accordingly, Plaintiffs argue, Defendants failure to take

action to have the lien removed was a breach of contract and AFG was within its contractual

rights to take whatever steps necessary to obtain possession of the lien.

Having reviewed the loan documents and the evidence in the record, the Court concludes

there are no genuine issue of material fact in dispute on this issue.  The loan documents do not

contain any applicable limitations to Plaintiffs' right to remove the lien placed on the collateral.

Defendants make assertions that the lien was invalid, but provide or point to no evidence to raise

any genuine issue of material fact that AFG exceeded its right under the sale agreements to take

the action to remove the lien, or to dispute the amount that AFG paid in order to obtain the lien

release.  The undisputed facts in the record are that AFG had the right to take possession of the

aircraft, to take reasonable steps necessary to remove the lien, and that it negotiated the lien

down from more than $400,000 to $125,000.  *See Dunn Decl.,* Exh. E.  Accordingly, Plaintiffs'

motion for summary judgment on this issue is granted.

### 2.        Expenses related to the failed auction.

The amount of expenses Plaintiffs' claim for the failed auction are not clear in Plaintiffs'

schedule of expenses.  *Dunn Decl.*, Exh. K (Doc. 28-7).   Defendants object to these expenses

generally on the basis that the failed auction adversely impacted the marketability of the aircraft

and therefore it was not a proper collection expense.   Defendants do not provide any legal

argument supporting their objections to these expenses and Plaintiffs did not address this issue in

their stipulation.

The Court has determined herein that the propriety of the on-line auction raised questions

of fact of the commercial reasonableness of the disposition of the collateral.  Those questions of

fact must be resolved to determine the propriety of the expenses incurred from that portion of the disposition.   Accordingly, the Court concludes that questions of fact exist as to whether Plaintiff may include this expense in the outstanding indebtedness.  Accordingly, Plaintiffs' motion on this issue is denied.

**3.      Airline Flight to Oakland, Invoice 8/26/08**

Plaintiffs claim $417 in expenses for the purchase of an airline flight.  Defendants object that the expense was not a collection expense and therefore improperly calculated into Defendants' outstanding debt.  Plaintiffs assert that the expense was incurred in order to repossess the aircraft, but that the attempt to repossess was unsuccessful because the plane was subject to the Sunset Aviation lien.

In support of their explanation of the expense, Plaintiffs cite to a declaration by "Wilson" at Doc.  No. 28-8 at 2.  *See* Doc. No. 35 at p. 9.  The Court's electronic file does not contain a Doc. No. "28-8," and the Court is unable to locate a "Wilson" declaration in any other obvious location within the Court file. However, Mr. Dunn, AFG's President with personal knowledge of the account and expenses incurred, declared that the amount of expenses set forth in AFG's schedule of expenses were incurred in the collection, sale and legal proceedings necessary to enforce the loan agreements. *See Dunn Decl.*, ¶ 20, and Exh. K.  In the absence of any contrary evidence int her record, the Court concludes there are no genuine issue of fact in dispute on the record regarding this $417 travel expense.

**4.      Legal Fees**

Plaintiff's request for judgment includes $37,055.33 in legal fees.  *Dunn Decl.*, Exh. K.

MEMORANDUM DECISION AND ORDER  25

Under the Aircraft Security Agreement, Defendant Duc Housing is liable for the following

expenses:

> **Attorneys' Fees; Expenses.**  Grantor agrees to pay upon demand all of Lender's
> costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal
> expenses, incurred in connection with the enforcement of this Agreement.  Lender
> may hire or pay someone else to help enforce this Agreement, and Grantor shall pay
> the costs and expenses of such enforcement.  Costs and expenses include Lender's
> reasonable attorneys' fees and legal expenses whether or not there is a lawsuit. . . .

*Dunn Decl.*, ¶ 4, Exh. C.   The Commercial Guaranty provides that individual Defendant Duc's

liability "shall not exceed at any one time $1,130,000 plus all costs and expenses of (A)

enforcement of this Guaranty and (B) collection and sale of the collateral securing this

Guaranty."  *Dunn Decl.*, ¶¶ 4,21; Exh. D, p. 1.

Defendants object to Plaintiff's inclusion of legal fees on the basis that these expenses are

requested prematurely.  Defendants argue that the expense should be obtained pursuant to

Fed.R.Civ. P. 54 which requires the filing of a Memorandum of Costs post judgment.

Defendants do not otherwise dispute legally or factually Plaintiff's entitlement to the claimed

attorneys' fees and costs.

The Court agrees with Plaintiff's analysis of the timing of its request for judgment on its

attorneys' fees.  *See Dunn Decl.*, ¶ 4; Exh. A, p. 4; Exh. B, p. 2; Exh. C, pp. 4 & 6; Exh. D, p. 2;

Fed. R. Civ. P. 54(d)(2)(A); *see also Carolina Power and Light Co. v. Dynegy Marketing and

Trade*, 415 F.3d 354 (4th Cir.  2005).  The Court further finds no issue of fact regarding AFG's

entitlement to attorneys' fees incurred in the enforcement of the loan documents at this stage in

the proceeding.  On this point, Plaintiff's motion is granted.

Nonetheless, the Court must review the record and conclude that there are no questions of

MEMORANDUM DECISION AND ORDER  26

fact regarding the reasonableness of the fees in order to grant Plaintiff's requested relief in full. Fed. R. Civ. P. 56(f).  The finds the record absent of competent legal testimony to this fact - that the expenses AFG sets forth in its schedule were necessary and reasonable expenses charged in connection with enforcement of the loan agreements.   For this reason, the Court concludes that Plaintiff has not met its burden to establish the amount of its attorneys' fees to which it is entitled.  The Court denies this aspect of the motion without prejudice.  Plaintiff will be allowed to resubmit its fee request consistent with this decision.

**E.      Affirmative Defenses**

Plaintiffs' Complaint sets forth claims for breach of contract, breach of commercial guaranty and for and award of attorneys fees and costs.  (Doc. No. 2-1).  In response, Defendants raised several affirmative defenses including that Plaintiffs' claims are barred in whole or part by Plaintiffs' breach of contract, breach of the covenant of good faith and fair dealing, failure to comply with the U.C.C., impairment of collateral, unconscionable conduct, waiver, failure to mitigate its damages and by estoppel.

Plaintiffs have moved for summary judgment in their favor, arguing that there are no questions of fact which preclude the Court from granting them relief.  Plaintiffs did not specifically address Defendants' affirmative defenses, and  Defendants did not address their affirmative defenses in the "first round" of briefing.  Defendants provided legal argument and citations to the factual record only as to the issue of commercial reasonableness of the sale, and their objections to some of the expenses Plaintiffs sought.

Defendants' only mention of their affirmative defenses in this matter appears in their

MEMORANDUM DECISION AND ORDER  27

response to Plaintiffs' notice of stipulation.  Defendants state, "In addition Defendants' affirmative defenses of breach of contract, breach of the covenant of good faith and fair dealing, impairment of collateral and unconscionable conduct remain viable defenses which may justify denial of a deficiency in its entirety."  (Doc. No. 49, p. 3.) Defendants do not address all of their affirmative defenses, or set forth legal standards or argument, or provide citations to the record sufficient to raise or point out genuine issues of material fact that exist on their remaining alleged viable defenses.

It is well established that on a motion for summary judgment, the moving party carries the burden of proof to show that no genuine issues of material fact exist even though the opponent would have the burden of proving the facts alleged, as in the case of an affirmative defense.  *SEC v. Murphy*, 626 F.2d 633, 641 (9th Cir. 1980);  *Doff v. Burnswick Corp.*, 372 F.2d 801, 805 (9th Cir. 1966).  However, if "on the basis of the materials presented by his affidavits, the moving part, if at trial, would be entitled to a directed verdict unless contradicted, it rests upon the opposing party at least to specify some evidence to show that such contradiction is possible."  *Id.* In that case, it is the opponent's "duty to expose the existence of a genuine issue which will preen the trial form being a useless formality."  *Id.*; *see also Stansifer v. Chrysler Motors Corp.*, 487 F.2d 59 (9th Cir. 1973).

Likewise, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)).  Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts."  *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d

MEMORANDUM DECISION AND ORDER  28

885, 889 (9th Cir. 2003).   Statements in a brief, unsupported by the record, cannot be used to create an issue of fact.  *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396, n.3 (9th Cir. 1995).

Moreover, although less settled principle of law, a Defendant may abandon an affirmative defense in failing to raise or support it initially in response to a motion for summary judgment. *See UMWA 1974 Pension v. Pittston Co.*, 984 F.2d 469, 478 (D.C. Cir.), *cert. denied*, 113 S. Ct. 3030 (1993); *but see, Holland v. United States*, 74 Fed.Cl. 225, 234 - 235 (Fed. Cl. 2006) (discussing disagreement among circuits regarding consequences of both movant and non-movant's failure to address affirmative defense in motion for summary judgment).

Defendants failed to point to evidence raising genuine issues of material fact regarding their selected alleged viable affirmative defenses.  *See Doff,* 372 F.2d at 805.  Accordingly, the Court concludes that there are no genuine issues of material fact that exist which prevent entering  judgment in Plaintiffs' favor as to liability, or otherwise inconsistent with the Court's decision herein on the damages claims.

### IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment is granted in part and denied in part.

The motion is granted with respect to Defendants' liability for Claim I (Breach of Contract) and Claim II (Breach of Commercial Guaranty) of  Plaintiffs' Complaint.

Plaintiffs' motion for summary judgment is denied, however, with respect the amount of damages and attorneys' fees and costs that Plaintiffs' may shall recover.

### V.  ORDER

MEMORANDUM DECISION AND ORDER  29

Consistent with the foregoing Memorandum Decision,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. No. 28)

is GRANTED IN PART and DENIED IN PART.



DATED:  **April 20, 2010**.

Honorable Larry M. Boyle
United States Magistrate Judge